UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN R. LABOUNTY,

   Plaintiff,

v.                                         CASE No. 8:11-CV-1718-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

   Defendant.

---

ORDER

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1] The decision of the Commissioner of Social Security granted the plaintiff's claim for supplemental security income payments under the medical-vocational guidelines when he turned 55 on March 26, 2009, but denied the claims prior to that date. Because the plaintiff has failed to show that the decision was erroneous, it will be affirmed.

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

I.

The plaintiff, who was 55 years old at the time of the most recent administrative hearing and who has a high school education, has worked primarily as a fabricator, relief operator, wood craftsman, mechanic/helper, and plumber (Tr. 133, 138, 146). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to fibromyalgia, urinary tract problems, depression, degenerative disc disease in back, sleep apnea, fatigue syndrome, hypertension, hiatal hernia, joint disease, and erosive esophagitis (Tr. 223). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge, on November 16, 2006, found that the plaintiff was not disabled (Tr. 704). However, on the plaintiff's request for review, the Appeals Council vacated the law judge's decision, and remanded the claims for further proceedings, along with a subsequent claim for supplemental security income that the plaintiff had filed (Tr. 706-08).

On remand, another hearing was held before the same law judge. The law judge found that the plaintiff had severe impairments of "lumbar disc disease with radiculopathy, cervical disc disease, thoracic disc disease, osteoarthritis of the hips, diabetes, varicose veins in the left leg, fibromyalgia, depression with anxiety, GERD, hypertension, headaches, and sleep apnea" (Tr. 26). The law judge concluded that these impairments limited the plaintiff to light work with a sit/stand option without exposure to hazards or temperature extremes, but restricted "to unskilled low stress work" with one- to two-step processes (id.).[2] The law judge determined that these limitations precluded the plaintiff from returning to prior work (Tr. 36). However, based upon the testimony of a vocational expert, the law judge found that, until March 26, 2009, there were jobs existing in significant numbers in the national economy that the plaintiff could perform, such as small products assembler and produce inspector (Tr. 36-37).

The law judge noted further that, as of March 26, 2009, the plaintiff's fifty-fifth birthday, his age category changed under the medical

---

[2] There is a typographical error in this finding because of the omission of the word "two" before the word "step." The hypothetical question to the vocational expert confirms that the law judge had a one- to two-step process in mind (Tr. 1236).

vocational guidelines (Tr. 37). Those guidelines directed a conclusion that the plaintiff was disabled at that point (id.).

The plaintiff sought review from the Appeals Council of the unfavorable portion of the decision, and submitted additional evidence in support of the request for review. The Appeals Council determined that the additional evidence did not provide a basis for changing the law judge's decision, and explained why (Tr. 8-9). Consequently, the Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42

U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that he became disabled before his insured status expired on December 31, 2006, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claims for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The administrative law judge considered the plaintiff's claims under regulations designed to incorporate vocational factors into the determination of disability claims. See 20 C.F.R. 404.1569, 416.969. Those regulations apply in cases where an individual's medical condition is severe

enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. 404.1569a, 416.969a. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. Id.

### III.

The plaintiff challenges the unfavorable portion of the law judge's decision on two related grounds. Neither has merit.

The plaintiff contends first that the law judge erred because he gave only minimal weight to the opinions of a treating rheumatologist, Dr. Amarilis Torres. On December 2, 2005, Dr. Torres filled out a form entitled

"Fibromyalgia Residual Functional Capacity Questionnaire" (Tr. 646-50). On the form, Dr. Torres indicated that the plaintiff's pain or other symptoms were severe enough to interfere constantly with the attention and concentration needed to perform even simple work tasks (Tr. 647); the plaintiff was incapable of even "low stress" jobs (id.); he cannot walk a city block without rest or severe pain (Tr. 648); he can only sit for fifteen minutes at a time (id.); he can only stand between zero and five minutes at a time (id.); during an eight-hour workday he can stand/walk for less than two hours and sit for about two hours (id.); the plaintiff must walk every fifteen minutes for three to four minutes (id.); he needs to be able to shift positions at will (id.); he will need to take unscheduled breaks daily for "1-2°" [hours?] (id.); during breaks the plaintiff needs to lie down (Tr. 649); he cannot even lift/carry less than 10 pounds (id.); he can never engage in any postural activities, including climbing stairs (id.); he can only rarely look down, turn his head, look up, or hold his head in a static position (id.); he has significant limitations in the use of his hands and fingers, and can only reach 10% of the time (Tr. 650); he will likely miss work more than four days per month (id.); and these symptoms and limitations apply since 2000 (id.).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge considered Dr. Torres's opinion and summarized it in his decision (Tr. 32). With respect to the opinion, he stated (id.):

> The undersigned finds that this opinion is entitled to just minimal weight despite the fact it was rendered by a treating source. Dr. Torres['s] findings on the many physical examinations that [s]he performed simply contradict these extreme functional limitations.

This explanation is adequate and provides good cause for discounting Dr. Torres's opinion. Moreover, it is supported by substantial evidence.

Notably, the law judge considered Dr. Torres to be a treating physician. However, the plaintiff overstates the relationship when he says that "Dr. Torres has maintained an ongoing medical treating relationship with Plaintiff since 2000, and had been treating Plaintiff for fibromyalgia since

that time" (Doc. 20, p. 6). Thus, on September 3, 2004, Dr. Torres noted that the plaintiff was last seen in October 2001, and that his care had been transferred to the VA (Tr. 633). On December 2, 2005, the day Dr. Torres filled out the questionnaire, she reported that the plaintiff was last seen one year ago (Tr. 611). Consequently, at the time Dr. Torres filled out the form, she was then seeing the plaintiff for just the second time in over four years. Further, at the hearing in September 2009, the plaintiff testified that he does not see Dr. Torres anymore because she did all that she could (Tr. 1236).

Accordingly, at the time Dr. Torres filled out the form she did not have a strong treating relationship with the plaintiff. Moreover, the form was completed in December 2005 (Tr. 650), which was almost four years before the law judge rendered his decision. There was no additional submission from Dr. Torres, updating her opinion.

In all events, the law judge adequately justified his determination to discount Dr. Torres's opinion. Thus, the law judge was correct to say that Dr. Torres opined "extreme functional limitations" (Tr. 32). For example, she said that the plaintiff could not sit for more than fifteen minutes, stand for only zero to five minutes, and could reach only 10% of the time (Tr. 648,

650). These limitations would prevent the plaintiff from engaging in daily activities most of the time. However, they are contradicted by the plaintiff's daily activities as reflected in the record. For instance, the plaintiff reported the following to an examining psychologist in March 2005, which was just months before Dr. Torres's opinion was rendered (Tr. 592):

> Mr. LaBounty stated that he typically arises at 8:00 o'clock in the morning, has coffee, walks his dog in the yard, and explained that he has a corner lot. He then stated that he "takes his pills (medication)", and plays computer games for approximately two hours. He then walks his dog, does the laundry, takes care of the cat, i.e. cleans the litter box, and shares the housecleaning chores with his wife. He also stated that he shares the cooking, but that they frequently go to Burger King or McDonald's. He stated he can bathe and dress himself, knows how to use the telephone and the post office. He explained that during the day he tends to watch television and to walk his dog five or six times a day, dependent upon the weather conditions and his physical condition. He related that he is able to read, and mostly reads science-fiction novels or murder mysteries, and he explained that during the day "I don't do a whole lot, I usually watch more TV". He explained that bedtime is approximately 11:00 p.m.

These acknowledged activities clearly refute the extreme limitations opined by Dr. Torres.

Dr. Torres is also incorrect to say that the plaintiff had suffered his limitations since 2000. In fact, the plaintiff worked as a fabricator until May 23, 2001, when he was laid off (Tr. 132).

The law judge also reasonably discounted Dr. Torres's opinion because her findings on physical examinations contradict the extreme limitations. Thus, on June 5, 2006, just six months after Dr. Torres filled out the form, she performed a musculoskeletal exam that was essentially normal (Tr. 832). She conducted another musculoskeletal exam on September 25, 2006, with the same results (Tr. 830).

The plaintiff challenges the law judge's determination that Dr. Torres's records do not support her extreme opinion. In this respect, he notes places in the record where the plaintiff showed tenderness, as well as mentions of other symptoms and medications (Doc. 20, p. 8). However, these references merely reflect that the plaintiff suffers from fibromyalgia.

"Fibromyalgia is a condition characterized by widespread pain in joints, muscles, tendons and soft tissues." Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 695 n.1 (11th Cir. 2006). The Eleventh Circuit has noted that the hallmark of fibromyalgia is

-12-

a lack of objective evidence. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). As explained in Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996):

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

The court added that "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working ..., but most do not ..." Id. at 307.

Consequently, the plaintiff cannot establish that the law judge erred in finding that Dr. Torres's notes do not support her opinion of extreme functional limitations by simply pointing to signs and symptoms of fibromyalgia. The law judge found that the plaintiff suffered from fibromyalgia and that it was a severe impairment. Importantly, the diagnosis

of fibromyalgia does not establish that the plaintiff suffers from the extreme limitations opined by Dr. Torres. "[T]he mere diagnosis of [a condition] .... says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Rather, it is the functional limitations that determine disability. Moore v. Barnhart, supra, 405 F.3d at 1213 n.6; McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In this case, the plaintiff does not cite to any medical evidence in the record that supports the extreme functional limitations opined by Dr. Torres.

The plaintiff, therefore, has failed to show that the reasons provided by the law judge for discounting Dr. Torres's opinion are inadequate or unsubstantiated. He certainly has not shown that the evidence compels a finding that the plaintiff suffers from the extreme functional limitations opined by Dr. Torres. See Adefemi v. Ashcroft, supra. Moreover, the Commissioner points out that the law judge's determination is also supported by the findings of consultative examiners and the opinions of nonexamining reviewing physicians (Doc. 21, pp. 8-9).

And here's the kicker: The plaintiff submitted to the Appeals Council a VA medical record which calls into question whether the plaintiff

even suffers from fibromyalgia. Thus, on May 14, 2009, a VA rheumatologist, Dr. Joanna Valeriano-Marcet, was requested to evaluate the plaintiff's fibromyalgia (Tr. 1082). She did not find any trigger points (Tr. 1086), as the Appeals Council noted (Tr. 8). These findings were made six months before the law judge rendered his decision. Notably, evidence submitted to the Appeals Council is part of the administrative record before the district court. Ingram v. Commissioner, 496 F.3d 1253 (11th Cir. 2007).

Interestingly, at the administrative hearing on September 4, 2009, the plaintiff was asked by his lawyer whether he thought he was really a fibromyalgia sufferer (Tr. 1225). The plaintiff responded (id.):

> According to the people that I have talked to who have it and who can exercise and go about their daily lives and take Lyrica and stuff like that, no. I don't – I think it's something else.
>
> ...
>
> I'm not a hypochondriac, but I just think I have fibromyalgia. I have some other problem.

This additional information further undermines the plaintiff's challenge to the law judge's evaluation of Dr. Torres's opinion. Regardless, for the reasons previously stated, the law judge rationally concluded that Dr. Torres's opinion should be discounted.

The plaintiff's second contention is that the law judge's hypothetical question to the vocational expert was flawed because it did not include the functional limitations opined by Dr. Torres. Since it has been concluded that the law judge reasonably rejected those extreme limitations, this contention is meritless.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram v. Commissioner of Social Security Admin., supra, 496 F.3d at 1270, quoting Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the administrative law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004). Consequently, the hypothetical question was not flawed because it did not contain the rejected limitations opined by Dr. Torres.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE the case.

DONE and ORDERED at Tampa, Florida, this 26th day of November, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE